FEDERAL RESERVE BANK OF CLEVELAND, APPELLANT, *v.* PUBLIC
UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Federal Reserve Bank v. Pub. Util. Comm. (1976),
45 Ohio St. 2d 216.]

(No. 75-510—Decided March 3, 1976.)

*Messrs. Muldoon, Pemberton & Ferris, Mr. David L. Pemberton* and *Mr. Robert G. Coury,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Charles S. Rawlings* and *Ms. Cheryl K. Hachman,* for appellee Public Utilities Commission.

*Messrs. George, Greek, King, McMahon & McConnaughey, Mr. A. Charles Tell,* for appellee Purolator Courier Corporation.

PAUL W. BROWN, J. The Public Utilities Commission of Ohio is authorized by law to regulate motor transportation companies[1] in this state. To that end, the commission has been granted specified investigatory powers, which may be invoked upon its own motion (R. C. 4909.27), or "upon complaint of a person, firm, corporation, or association, of a mercantile, agricultural, or manufacturing society, or of a body politic or municipal organization." R. C. 4909.24. If, after an investigation, an existing rate is found to be unjust or unreasonable, the commission is required to "determine and by order fix a reasonable rate * * *." R. C. 4909.-28. After appropriate notice and hearing, the commission may also rescind, alter or amend any order made by it fixing the rate of a carrier. R. C. 4909.30.

The instant appeal brings before the court the ques-

---

[1] The term "motor transportation company" is defined by R. C. 4921.-02. The rate schedules of such companies, including changes in those rate schedules, are "governed by the laws of this state applicable to such schedules by railroads." R. C. 4921.23.

tion of whether, during the pendency of an investigation, pursuant to R. C. 4909.27, into the justness and reasonableness of a motor transportation company's rates, the commission is prohibited from accepting for filing any further tariff or supplement affecting those rates.

The Federal Reserve Bank, having been subjected to increased rates imposed by Purolator, argues that to allow the filing of successive tariffs or supplements during the pendency of an investigation will deprive the Ohio shipping public of any effective means of protecting itself from unjust and unreasonable motor carrier rate increases, and may, in situations like that presented here, deprive the Public Utilities Commission of jurisdiction over the subject matter of its own investigation.

The commission, on the other hand, citing R. C. 4909.27, contends that it is without power to reject a proposed rate increase, which otherwise complies with the statutory and regulatory requirements governing the filing thereof, merely because the reasonableness of a prior rate increase has yet to be determined.

R. C. 4909.27 provides:

"If the Public Utilities Commission believes that any rate or charge may be unreasonable or unjustly discriminatory, and that an investigation relating thereto should be made, it may investigate them upon its own motion. * * *

"When any schedule is filed with the commission stating a new individual or joint rate or charge, any new individual or joint classification, or any new individual or joint regulation or practice affecting any rate or charge, the commission may, either upon complaint or upon its own initiative without complaint, at once, and if it so orders, without answer or other formal pleading by the interested carriers, but upon reasonable notice, enter upon a hearing concerning the propriety of such rate, charge, classification, regulation, or practice. Pending such hearing and the decision thereon, the commission upon filing with such schedule and delivering to the carriers affected thereby, a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and postpone the use and

operation of such rate, charge, classification, regulation, or practice, for a period of not longer than one hundred twenty days beyond the time when such rate, charge, classification, regulation, or practice would otherwise go into effect. After a full hearing, whether completed before or after the rate, charge, classification, regulation, or practice goes into effect, the commission may make such order in reference to such rate, charge, classification, regulation, or practice as would be proper in a proceeding initiated after the rate, charge, classification, regulation, or practice, had become effective. If any such hearing cannot be concluded within such period of suspension, the commission may extend the time of suspension for a further period not exceeding thirty days. * * *''

In clear language, the statute authorizes the Public Utilities Commission, with or without the filing of a complaint, to investigate the reasonableness of a proposed rate or charge, and, in its discretion, to suspend the effectiveness of that rate. Pursuant to the statute, the commission may initially suspend the effectiveness of a rate not longer than 120 days. If the investigation has not been completed within that time period, the commission may suspend the rate for an additional period not to exceed 30 days, after which the rate goes into effect by operation of law pending conclusion of the investigation.

Neither the quoted statute, nor any other to which we are cited, authorizes the commission to reject a rate filing, whether or not an investigation is simultaneously pending concerning that rate. Two federal cases which interpret similar statutes are in accord.[2]

---

[2]In *Willmut Gas & Oil Co.* v. *Federal Power Comm.* (C. A. D. C. 1961), 294 F. 2d 245, the United Gas Pipe Line Company filed a schedule of rates which increased rates under investigation by the Federal Power Commission. A customer of United, The Willmut Gas & Pipe Line Company, challenged the new schedule, alleging that "the commission had no authority to permit United to file or make effective increased rates superseding previously filed increased rates which were then still under investigation." The Court of Appeals rejected that claim, at pages 248 and 250, stating:

"* * * Under its rate making and rate-changing power, * * *

FRB does not rely solely upon the language of R. C. 4909.27, however, but upon the "spirit and intention" of that code section, when read in light of this court's decision

United could change at will the rates offered to customers, since it had established them *ex parte* and not by contract. Moreover, Section 4(d) of the Act does not give the commission discretion to reject schedules of increased rates tendered by a natural gas company; on the contrary, Section 4(d) requires that new schedules be filed with the commission when notice of a rate change is given. The commission's power with respect to a filed increase is found in Section 4(e): to initiate a hearing as to the lawfulness of the changed rates, to suspend their effectiveness for a time, and to order refunded that portion of the increase, which after hearing, it determines to be unlawful. Thus the Act provides for investigation of changed rates which have been filed; but it does not contemplate that the commission may refuse to file a tendered new schedule showing changes in rates, or that it may summarily reject or disallow the new schedule without a hearing.

"* * *

"It may be that, under its power to change at will the rates which it established *ex parte* and offered to prospective customers, United has been 'piling increase upon increase,' with results which Willmut finds oppressive and thinks unreasonable and unlawful. But Section 4(d) does not forbid such successive filings; it merely requires that notice thereof be given the commission so it may investigate their lawfulness. So, if 'piling increase upon increase' is to be forbidden, legislation to that effect must be adopted."

In *Associated Press* v. *Federal Communications Comm.* (C. A. D. C. 1971), 448 F. 2d 1095, various plaintiffs contended that the Federal Communications Commission was obligated to reject a rate increase filed by the American Telephone & Telegraph Company because the commission had not completed a pending investigation into the lawfulness of a previously filed interim rate tariff. The Court of Appeals denied relief, at page 1105, stating:

"We know of no rule of law that a proposed rate increase must be rejected merely because the lawfulness of a prior rate increase has not been finally determined. Indeed, this court has held to the contrary. See *Willmut Gas & Oil Co.* v. *FPC*, 111 U. S. App. D. C. 49, 52-53, 294 F. 2d 245, 248-249 (1961), cert. denied, 368 U. S. 975, * * * (1962). A carrier is not bound by hoops of steel to every proposal of a rate increase that awaits a hearing. Even assuming that extraordinary factors might preclude a carrier from filing additional rate increases while an investigation of previous increases is pending, the commission found no such extraordinary factors in this case. We think the commission's conclusion was not unreasonable."

in *Logan Gas Co.* v. *Pub. Util. Comm.* (1926), 115 Ohio St. 107. In that case, the Logan Gas Company filed with the Public Utilities Commission schedules to increase the rates and charges for natural gas furnished to Ohio consumers. The schedules were suspended by the commission, pursuant to G. C. 614-20, and a hearing and investigation ordered. At the conclusion of the suspension period, the investigation had not been completed. The company filed a bond, as required by the statute at that time, and put the schedule into effect.

Subsequently, Logan Gas filed new schedules containing further increases in the rates and charges under investigation. The commission suspended the effective date of this new schedule for 120 days. Later, upon the motions of certain municipalities, the commission ordered the second schedule stricken from its files. This court affirmed, stating in the syllabus:

"Under Section 614-18 and 614-20, General Code, whenever a public utility has filed with the Public Utilities Commission a schedule effecting an increase in its rates, and when the commission has ordered that a hearing be entered upon concerning the propriety of such rates, and the commission pending the hearing has suspended the operation of such schedule, and when it appears that such hearing cannot be concluded within the period of suspension, and the public utility has filed with the commission a bond approved by the commission guaranteeing repayment with interest to all the consumers of such portion of such increased rates collected by such utility, as the commission upon final hearing may determine to have been unreasonable or excessive, such rates go into effect at the end of the period of suspension, and the public utility is not authorized thereafter, during the pendency of the hearing, to file a new schedule effecting a change in the schedule of rates filed with the commission and in effect at the time."

*Logan Gas* is distinguishable from the present case. *Logan Gas* turned upon a literal reading of G. C. 614-18 and 614-20. G. C. 614-18 prohibited public utilities from charg-

ing different rates than those "specified in its schedule filed with the commission and *in effect at that time.*" (Emphasis added.) G. C. 614-20 provided, in part, that:

"* * * if any such hearing cannot be concluded within the period of suspension, as above stated, such rate * * * shall go *into effect* at the end of such period of suspension upon the public utility filing with the commission a bond * * * to the satisfaction of the commission, securing * * * the repayment, with interest, * * * to all the consumers of such portion of such increased rate, * * * collected by such utility as the commission, upon final hearing, may determine to have been unreasonable or excessive * * *." (Emphasis added.)

As this court viewed the statutory scheme in *Logan Gas,* rates under investigation could become effective in two ways only: by the filing of a bond pending conclusion of the investigation; or by order of the commission upon conclusion of the investigation. The decision in *Logan Gas* (115 Ohio St. 107) was predicated upon our determination that a rate "in effect" by virtue of the filing of a bond could not be changed during the pendency of the investigation concerning that rate. At page 117, we stated:

"In this view of the matter, the power of the utility to file schedules up until the time it accepts the rate by filing a bond with the commission, which is approved under the provisions of Section 614-20, is not in question here. After the utility files its bond, taking this deliberate action to put a certain schedule into effect, it is precluded thereafter from filing subsequent schedules, because the initial schedule of rates has gone into effect and the ultility cannot charge different rates from those in effect in its schedule filed with the commission."

The statute involved in *Logan Gas* is significantly different from R. C. 4909.27. Under G. C. 614-20, the investigation and suspension of rates went hand-in-hand; one could not be had without the other. Under R. C. 4909.27, rates may be investigated without the suspension thereof.

Under G. C. 614-20, a suspended rate became effective

only by the utility's affirmative action of filing a bond to insure the payment of any refund ordered. That provision was not mandatory. "It gives the utility that privilege so that it may accept the rate, which it has here in fact done by filing the bond, and the rate having gone into effect under the statute, the utility is bound by its own action." *Logan Gas, supra,* at page 118. Under R. C. 4909.27, rates go into effect, at the conclusion of an ordered suspension period, by operation of law.

If, as FRB contends, *Logan Gas* did not turn upon peculiarities of the statutory language described, that case must be overruled, because G. C. 614-20, like R. C. 4909.27, contains no language which authorized the commission to reject a schedule or tariff during the pendency of an investigation.

In specific reference to the facts of this case, FRB asserts that "* * * Purolator was permitted to have no less than six separate tariffs on file at the same time, containing differing rates and provisions affecting the same traffic." The bank also contends that by permitting Purolator to "cancel" PUCO 2 and the supplements thereto, while portions of PUCO 2 were under investigation and/or suspension, the commission was divested of any power to investigate the reasonableness of those schedules. Neither contention has merit.

First, the rates contained in each tariff, or supplements thereto, filed by Purolator superseded and replaced those rates contained in Purolator's previous tariffs or supplements. Only one rate for each classification of commercial traffic was, and can be, in effect at any one time. The fact that more than one rate may have been *under investigation* during a particular time period does not mean that more than one rate was in effect, or could be charged, during that time period.

Second, an investigation by the commission pursuant to R. C. 4909.27 concerns the "rate or charge" contained in a tariff or supplement, not the tariff or supplement itself Purolator's new tariffs, which became effective January 15,

1975, when coupled with the supplement filed on that date, superseded and canceled a previous tariff and supplements thereto, but did not increase the "rates" above those previously in effect. The fact that the new tariffs were labeled in a manner different from the old did nothing to divest the commission of jurisdiction over the rates contained therein.

Finally, FRB disputes the legality of that portion of the commission's order of April 30, 1975, which stated that the results of the investigation into the reasonableness of Supplement 6 to PUCO 2 would, insofar as possible, be applied to the rates contained in any tariff filed subsequent to the institution of that investigation proceeding. FRB contends, and we agree, that such order misconstrues the purpose and effect of R. C. 4909.28,[3] and denies FRB its right to an independent determination of the reasonableness of each rate increase filed by Purolator. The commission cannot properly apply to a carrier's tariff schedule the results of an investigation not directed to that schedule, and which might contain entirely different rates and provisions and be based upon entirely different economic considerations. More appropriate, we believe, was a second part of the commission's order of April 30, 1975, which consolidated the investigation and hearing of the rates set forth in Supplement 1 to PUCO 14 with the pending investigation and hearing into the reasonableness of the rate increase contained in Supplement 6 to PUCO 2. Such a procedure, absent prejudice to an affected party, might

---

[3]R. C. 4909.28 provides:

"If, upon an investigation under Chapters 4901, 4903, 4905, 4907, 4909, 4921, 4923, and 4925 of the Revised Code, the Public Utilities Commission finds that any existing rate, fare, charge, or classification, any joint rate, or any regulation or practice affecting the transportation of persons or property, or service in connection therewith, is unreasonable or unjustly discriminatory, or that any service is inadequate, it shall determine and by order fix a reasonable rate, fare, charge, classification, joint rate, regulation, practice, or service to be imposed, observed, and followed in the future, in place of that so found to be unreasonable, unjustly discriminatory, or inadequate. * * *"

clarify and facilitate an otherwise complex and time-consuming proceeding.

It may well be, to paraphrase the *Willmut* court, fn. 2 *supra,* that under its power to change at will the rates which it has established *ex parte* and offered to potential customers, Purolator has been "piling increase upon increase" with results which FRB finds oppressive and thinks unreasonable and unlawful. But R. C. 4909.27 does not forbid successive filings; it merely provides the Public Utilities Commission with sufficient power to investigate and suspend a rate, while making a determination as to its reasonableness. If "piling increase upon increase" is to be forbidden, legislation to that effect must be adopted.

The order of the Public Utilities Commission is affirmed in part and reversed in part, and the cause remanded for further proceedings consistent with this opinion.

*Order affirmed in part and reversed in part.*

O'NEILL, C. J., POTTER, CORRIGAN, STERN, CELEBREZZE and W. BROWN, JJ., concur.

POTTER, J., of the Sixth Appellate District, sitting for HERBERT, J.