**WILLMUT GAS & OIL COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.
**United Gas Pipe Line Company,**
Intervenor.
No. 15775.

United States Court of Appeals
District of Columbia Circuit.
Argued April 19, 1961.
Decided July 20, 1961.

Mr. Bryce Rea, Jr., Washington D. C., with whom Mr. Thomas M. Knebel, Washington, D. C., was on the brief, for petitioner.

Mr. Milton J. Grossman, Atty., F. P. C., with whom Messrs. John C. Mason, Gen. Counsel, F. P. C., and Howard E. Wahrenbrock, Sol., F. P. C., were on the brief, for respondent.

Mr. Thomas Fletcher, Houston, Tex., with whom Mr. C. Huffman Lewis, Shreveport, La., was on the brief, for intervenor.

Before WILBUR K. MILLER, Chief Judge, and FAHY and BURGER, Circuit Judges.

WILBUR K. MILLER, Chief Judge.

At rates it established *ex parte*, and filed with the Federal Power Commission, United Gas Pipe Line Company, a wholesaler, has for some years sold to Willmut Gas and Oil Company, a local distributor in Hattiesburg, Mississippi, all the natural gas required by the latter for resale.

It does not appear that United has contracted with Willmut not to change the rates applicable to its purchases.

On September 30, 1955, United increased its tariffs under which Willmut was buying gas and, as required by Section 4(d) of the Natural Gas Act,[1] notified the Commission of the changes made. Acting under Section 4(e) of the Act,[2] the Commission suspended for five months the effectiveness of the increases[3] and ordered a hearing as to whether they were lawful. The hearing had not been completed at the end of the five-month period, so the increase was made effective, subject to a refunding bond.

On May 15, 1956, United filed a second rate increase which the Commission suspended and set for hearing. The trial examiner on April 5, 1960, issued a decision as to the filings of September 30, 1955, and May 15, 1956, which the Commission adopted, with modification, on January 4, 1961.[4]

After the two filings above referred to, United filed four additional increases: on May 29, 1957, May 29, 1958, March 30, 1959, and February 11, 1960.[5] Each

---

1. Section 4(d) of the Act, 52 Stat. 822 (1938), 15 U.S.C.A. § 717c(d), is as follows:

   "Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published."

2. Section 4(e) of the Act, 52 Stat. 822 (1938), 15 U.S.C.A. § 717c(e), is in pertinent part as follows:

   "Whenever any such new schedule is filed the Commission shall have authority, either upon complaint of any State, municipality, or State commission, or upon its own initiative without complaint, at once, and if it so orders, without answer or formal pleading by the natural-gas company, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect: *Provided*, That the Commission shall not have authority to suspend the rate, charge, classification, or service for the sale of natural gas for resale for industrial use only; and after full hearing, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect. Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission * * * and, upon completion of the hearing and decision, to order such natural-gas company to refund, with interest, the portion of such increased rates or charges by its decision found not justified. * * *"

3. Except industrial rates, which are not subject to suspension.

4. The delay was caused by the intervening litigation which culminated with the decision of the Supreme Court in United Gas Pipe Line Co. v. Memphis Light, Gas and Water Division, 1958, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153.

5. A still later increase, made December 15, 1960, is not involved here. That of February 11, 1960, will be referred to hereinafter as the latest.

was suspended and set for hearing, and presumably each became effective five months after suspension, subject to undertakings for refunds. Before a hearing on the February 11, 1960, filing had been ordered, Willmut moved the Commission to reject it in order "to prevent the destruction of its jurisdiction to entertain" the pending proceedings involving earlier increases. Willmut also moved that, if the Commission accepted for filing the February 11, 1960, schedules, it deny the increases contained in the preceding filings then under investigation, and order United to refund all sums collected thereunder.

The order suspending and directing a hearing on the lawfulness of the latest increased rates was issued March 10, 1960. In a footnote to this order, the Commission noted that Willmut "has filed a petition to reject the instant proposed filing, or, in the alternative, to disallow pending undecided rate review proceedings," and noted further that United had filed an answer thereto. But the Commission did not expressly rule on Willmut's motions; inferentially it denied them by accepting United's latest filing and failing to disallow and order refunded the previous increases involved in the undecided cases.

Its petition for rehearing having been denied by the Commission, Willmut petitioned for judicial review of the order of March 10, 1960, making these contentions:

(1) That the Commission had no authority under the Act to permit United to file or make effective increased rates superseding previously filed increased rates which were being investigated; that the Commission's duty was either to reject the filing of February 11, 1960, or to accept it and at the same time to disallow previously filed increases and order refunds with respect thereto;

(2) That the Commission abused its discretion in accepting for filing United's latest rate increases; that it should have exercised its power under Section 16 of

the Act to order maintenance of the *status quo* during the entire period of investigation, which could have authorized rejection of the new schedules;

(3) That the Commission erred in not rejecting the latest filing on the ground it showed on its face that the increased rates fixed therein were unlawfully discriminatory and preferential.

There may be doubt as to whether Willmut, which did not become a party to the proceeding to investigate United's new rates until after its petition for review had been filed in this court, can obtain review of an order entered before its intervention; or whether it can be said that this order, which merely initiated the proceedings, can correctly be called "an order issued by the Commission in such proceeding" which will be judicially reviewed at the petition of a party aggrieved thereby; or whether Willmut was aggrieved by the order, which in direct terms did no more than suspend and direct a hearing concerning the changed rates of which Willmut complains. Cf. Section 19(b) of the Natural Gas Act, 52 Stat. 831 (1938), 15 U.S.C.A. § 717r(b). But, as these questions were not suggested by the opposing parties—except that the aggrievement question was mentioned but not pressed—we resolve any such doubt in Willmut's favor, and proceed to consider the reasons it advances for reversal of the order of March 10, 1960.

■ Willmut's first point, that the Commission had no authority to permit United to file or make effective increased rates superseding previously filed increased rates which were then still under investigation, is not well taken. Under its rate-making and rate-changing power, which we shall show is not affected by the Natural Gas Act, United could change at will the rates offered to customers, since it had established them *ex parte* and not by contract. Moreover, Section 4(d) of the Act does not give the Commission discretion to reject schedules of increased rates tendered by a natural gas

company; on the contrary, Section 4(d) requires that new schedules be filed with the Commission when notice of a rate change is given. The Commission's power with respect to a filed increase is found in Section 4(e): to initiate a hearing as to the lawfulness of the changed rates, to suspend their effectiveness for a time, and to order refunded that portion of the increase which, after hearing, it determines to be unlawful. Thus the Act provides for investigation of changed rates which have been filed; but it does not contemplate that the Commission may refuse to file a tendered new schedule showing changes in rates, or that it may summarily reject or disallow the new schedule without a hearing.

The petitioner argues that the filing of new rates, which supersede earlier increases already under investigation, destroys the Commission's jurisdiction to continue its inquiry into the lawfulness of the previous increases, because the filing of superseding rates converts those which are superseded into past rates concerning which the Commission has no authority.

If this were true, a natural gas company whose newly-increased rates were being investigated by the Commission could render them immune from further scrutiny by the simple expedient of filing another increase. To avoid this result of its argument, which obviously it does not desire, Willmut contends that, if a new filing for increased rates is accepted, the Commission "must dismiss the pending proceedings [which are hearings concerning the lawfulness of previous increases] for lack of jurisdiction to entertain them, disallow the rates at issue therein, and order refund of all amounts collected by virtue of them."

Willmut thus suggests an incongruous procedure: that jurisdiction be disclaimed with reference to earlier increases, but that nevertheless it be exercised by disallowing the rates fixed in the previous filings, and ordering refunds.

We find nothing in the Act or in the decisions which authorizes the Commission to disclaim further jurisdiction in a pending Section 4(e) hearing because another rate increase was filed during its pendency. And we are unwilling to hold, in the absence of controlling judicial precedent or express statutory provision requiring us to do so, that increased rates which are the subject of unfinished hearings under Section 4(e) must or may be summarily disallowed because the natural gas company files a schedule of new increases.

On the contrary, we hold that, when the Commission orders suspension of and a hearing with respect to increased rates, its jurisdiction to investigate the lawfulness of the increase is not lost merely because the natural gas company later files for a still larger increase. In such circumstances, the Commission has authority to continue its investigation as to whether the rates previously filed were lawful for the period from the date of filing until they were superseded by a later filing, and to order a refund of the amounts collected during that period which it thereafter determines to have been unlawful. From this it follows that the Commission did not err in permitting United to file and make effective the increases of February 11, 1960, even though that filing superseded earlier and smaller increases which were still under investigation.

We turn to consider the petitioner's second point: that the Commission abused its discretion in accepting for filing the increased rates tendered on February 11, 1960. On this point, Willmut's theory appears to be that the Commission erred in failing to issue orders under Section 16 of the Act which would "prevent Section 4 of the Act from being used as a vehicle for piling increase upon increase with such frequency and regularity as to foreclose any hope of either fixing lawful rates for the present and future or giving any rate stability." Had the Commission issued such preventive orders under Section 16, says Will-

mut, it would have been justified by them in rejecting United's latest filing.

In considering this contention, it is necessary to determine whether Section 16 of the Act authorizes the Commission to enter an order or adopt a rule or regulation which would permit it, in some circumstances, to refuse to receive for filing a new schedule showing changes in rates tendered by a natural gas company pursuant to the mandate of Section 4(d).

■■ Section 16 of the Act speaks in broad and general terms: it provides, inter alia, that "The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this act." But the broad power granted by this statutory language does not authorize an order, rule or regulation which would nullify or restrict the right of a natural gas company to change the rates under which it offers to furnish service, subject only to the requirement of Section 4(d) of the Act that it notify the Commission of the changes, so that it may proceed under Section 4(e). As the Supreme Court said in the Mobile opinion,[6] "The initial rate-making and rate-changing powers of natural gas companies remain undefined and unaffected by the Act." An order or regulation requiring the rejection of increased rates because earlier increases were still under investigation, which Willmut suggests, would deny to United the right to change rates at which it offers service, which the Mobile decision says is the right of a natural gas company. Thus, it seems clear that such an order or regulation would amount to a legislative change which is beyond the authority of the Commission.

Willmut's suggestion that United has used Section 4 of the Act "as a vehicle for piling increase upon increase" mistakes the nature and purpose of that section of the statute. The "vehicle" which United has used is one of its own inherent rate-making and rate-changing powers which the Supreme Court has said exists unaffected by the Natural Gas Act, and has described as the power "to establish ex parte, and change at will, the rates offered to prospective customers." The Supreme Court went on to say, " * * * [Section] 4(d) means simply that no change—neither a unilateral change to an ex parte rate nor an agreed-upon change to a contract—can be made by a natural gas company without the proper notice to the Commission." [7]

It may be that, under its power to change at will the rates which it established ex parte and offered to prospective customers, United has been "piling increase upon increase," with results which Willmut finds oppressive and thinks unreasonable and unlawful. But Section 4(d) does not forbid such successive filings; it merely requires that notice thereof be given to the Commission so it may investigate their lawfulness. So, if "piling increase upon increase" is to be forbidden, legislation to that effect must be adopted.

■ We are not impressed by Willmut's argument on its third point, that the Commission erred in not rejecting the latest filing as being unlawfully discriminatory and preferential on its face. As we have seen, a natural gas company has the duty imposed by Section 4(d) to file with the Commission new schedules reflecting changes in rates. The Commission was not authorized to reject the filing in this case on any ground appearing on its face. Its only statutory authority was to enter upon a hearing concerning the lawfulness of such rates, to suspend their effectiveness for a time, and after full hearing to make such orders with reference thereto as would be

6. United Gas Pipe Line Co. v. Mobile Gas Service Corp., 1956, 350 U.S. 332, 343, 76 S Ct. 373, 380, 100 L.Ed. 373.

7. Ibid.

proper in a proceeding under Section 5(a) of the Act.[8]

For the reasons given, we uphold the Commission's order.

Affirmed.

---

8. Section 5(a), 52 Stat. 823 (1938), 15 U.S.C.A. § 717d(a), is as follows:

"Whenever the Commission, after a hearing had upon its own motion or upon complaint of any State, municipality, State commission, or gas distributing company, shall find that any rate, charge, or classification demanded, observed, charged, or collected by any natural-gas company in connection with any transportation or sale of natural gas, subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory, or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order: *Provided, however,* That the Commission shall have no power to order any increase in any rate contained in the currently effective schedule of such natural-gas company on file with the Commission, unless such increase is in accordance with a new schedule filed by such natural-gas company; but the Commission may order a decrease where existing rates are unjust, unduly discriminatory, preferential, otherwise unlawful, or are not the lowest reasonable rates."