UNITED GAS PIPE LINE COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent (two cases).

Nos. 75–1943 and 75–2051.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 24, 1976.

Decided Feb. 24, 1977.

Stephen A. Wakefield, Houston, Tex., with whom Irving Jacob Golub, William B. Cassin and Phillip D. Endom, Houston, Tex., were on the brief for petitioner, Robert A. Webb, Houston, Tex., also entered an appearance for petitioner.

Thomas M. Walsh, Atty., F. P. C., Washington, D. C., with whom Drexel D. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel and Allan Abbot Tuttle, Sol., F. P. C., Washington, D. C., were on the brief for respondent. Scott M. DuBoff, Atty., F. P. C., Washington, D. C., also entered an appearance for respondent.

Before TAMM and ROBB, Circuit Judges, and GESELL,* United States District Judge for the United States District Court for the District of Columbia.

Opinion for the Court filed by TAMM, Circuit Judge.

TAMM, Circuit Judge.

Petitioner, United Gas Pipe Line Company (United), seeks review of two Federal Power Commission (FPC or Commission) orders disallowing certain of United's costs of service included in two of its general rate filings. The issue presented for decision is whether the FPC could reject United's rate items by summary disposition without holding a hearing to determine their lawfulness. We find, for reasons discussed below, that United was entitled to a hearing under

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

section 4(e) of the Natural Gas Act. 15 U.S.C. § 717c (1970).

## I. FACTUAL BACKGROUND

In 1970 the Commission initiated an advance payment program to stimulate the exploration and development of natural gas supplies for the interstate market.[1] The program, which was terminated at the end of 1975,[2] encouraged pipeline companies to provide interest-free loans for exploration and development by gas producers. The pipeline companies were allowed by the Commission to include the amounts so loaned in their rate bases as costs of providing service.

United's rate filings which are the focal point of this litigation included similar costs.[3] United developed two alternatives to the FPC's advance payment program. Under the only alternative used,[4] it entered into "Agreements" with gas producers to help arrange third-party financing of exploration and development, and to pay the cost of that financing. In return, United is entitled to the gas from acreage developed with the funds it has helped raise. The benefits derived from these Agreements were allegedly comparable to those under the advance payment program: interest-free capital for the producer and the right to acquire gas produced from the prospect for United and its customers. United also contends that under its Agreements these benefits are achieved at a significantly reduced cost to the customer and risk to itself. Petitioner's Brief at 10.

The Commission summarily rejected that portion of United's filings covering costs incurred under its Agreements, reasoning that they were not encompassed by the advance payment regulations and therefore contravened established administrative policy. J.A. at 69–70. The Commission explained that the advance payments were necessary to supply capital for gas production whereas under the Agreements, the producers were able to attract exploration and development capital without the assistance of advance payments. J.A. at 70–71. Accepting all of United's allegations as true, the FPC still found United had not made out a prima facie case and a summary

1. For a concise history of the Commission's orders which were the genesis of the advance payment program, see *Michigan Wisconsin Pipe Line Co. v. FPC*, 171 U.S.App.D.C. 352, 520 F.2d 84, 85–86 (1975).

2. *Accounting and Rate Treatment of Advances Included in Account No. 166, Advances for Gas Exploration, Development and Production*, FPC Dkt. Nos. R–411 and RM74–4 (Dec. 31, 1975). The FPC's termination had prospective effect only, so that rate base treatment is still accorded to advance payments made under contracts executed prior to December 31, 1975. United's arrangements were entered into prior to that date.

3. The procedural history of United's two filings is as follows. On November 4, 1974, United tendered its proposed tariff sheets containing increased rates in FPC Docket No. RP75–30 which the Commission accepted, suspending their effectiveness under the authority of section 4 of the Natural Gas Act, and subsequently permitted United to make such tariff sheets effective, subject to refund, on May 20, 1975. Meanwhile, United's other increased rate filing, FPC Docket No. RP75–109, which involved proposed increases beginning on July 15, 1975, went through the same accepting and suspending process but the effectiveness of these

sheets was conditioned on the elimination of the costs associated with the Agreements and the New Entity. United filed for rehearing of this July 7, 1975 FPC order but its application was denied on September 3, 1975. On September 4, 1975, the Commission granted the FPC staff's motion for summary disposition in No. RP75–30 as the same costs at issue there had been rejected in United's No. 75–109 filing. United's application for rehearing in this docket was also denied. This court granted United's motions for consolidation of the petitions for review and for stay of the Commission's orders on November 12, 1975. Petitioner's Brief at 3–6; Respondent's Brief at 4–10.

4. Under the second alternative, United would have created a "New Entity" to make conventional advance payments to gas producers. The New Entity would have assigned to United the gas rights it had received for the payments, and it would have reimbursed the New Entity for its costs. The New Entity has not been used to make advance payments, and United has not incurred costs under this scheme. The issues concerning this particular financing alternative are therefore moot. Petitioner's Brief at 4 n. 2; Respondent's Brief at 5 n. 3.

disposition was therefore deemed appropriate. J.A. at 70. Rehearing was subsequently denied on this same basis, and United petitioned this court for review. J.A. at 144–45.

## II. THE VALIDITY OF SUMMARY REJECTION

■ Section 4 of the Natural Gas Act[5] requires pipeline companies to file new schedules for rates or charges with the Commission 30 days prior to their proposed effective date. The Commission's power with respect to a filed increase, such as United's, is clearly set forth in section 4(e), which grants the FPC authority to initiate a hearing as to the lawfulness of the changed rate, to suspend its effectiveness pending decision, and to order refunded that portion of the increase which, *after a hearing*, it determines to be unlawful.[6] *Consolidated Edison Co. v. FPC*, 168 U.S. App.D.C. 92, 512 F.2d 1332, 1339 (1975); *Willmut Gas & Oil Co. v. FPC*, 111 U.S.App. D.C. 49, 294 F.2d 245, 248–49 (1961), *cert. denied*, 368 U.S. 975, 82 S.Ct. 477, 7 L.Ed.2d 437 (1962). The Act does not contemplate

then that the Commission may summarily disallow cost of service items included in a new schedule without a hearing. *Willmut Gas & Co. v. FPC, supra,* 294 F.2d at 249.

■ The Commission nevertheless argues that no hearing was required in this particular instance because the interest reimbursement provisions in the Agreements contravened the agency's "long-standing policy" of affording rate base treatment only for advance payments necessary to promote capital formation, thus allowing the agency to reject the filing at this early stage. Respondent's Brief at 12, 19–20. While there exists a judicially-recognized exception to United's statutory right to a Commission hearing, it is only applicable to those situations where the facts are not in dispute and the new tariff contravenes valid and explicit FPC regulations or policy. *FPC v. Texaco, Inc.*, 377 U.S. 33, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1964); *United States v. Storer Broadcasting Co.*, 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956); *Municipal Light Boards v. FPC*, 146 U.S.App.D.C. 294, 450 F.2d 1341 (1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 445 (1972).

---

**5.** 15 U.S.C. § 717c (1970).

**6.** Section 4(e) of the Natural Gas Act provides in full:

Whenever any such new schedule is filed the Commission shall have authority, either upon complaint of any State, municipality, State commission or gas distributing company, or upon its own initiative without complaint, at once, and if it so orders, without answer or formal pleading by the natural-gas company, but upon reasonable notice, to enter upon a *hearing* concerning the lawfulness of such rate, charge, classification, or service; and, *pending such hearing* and the decision thereon, the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; and *after full hearings,* either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not

been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect. Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission, to keep accurate accounts in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts were paid, and, upon completion of the hearing and decision, to order such natural-gas company to refund, with interest, the portion of such increased rates or charges by its decision found not justified. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the natural-gas company, and the Commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible. *Id.* (emphasis added).

We find that genuine factual disputes actually do exist between the parties to this litigation and that the interest reimbursement provisions do not on their face contradict any specific Commission policy or regulation. We are constrained to conclude, therefore, that the FPC abused its discretion in refusing to grant United's request for a hearing to consider the lawfulness of its rate filings.

The basic reason for the Commission's refusal to afford United a hearing, as explained in its Order Granting Staff's Motion for Summary Disposition, was that the advance payments were *necessary* to supply capital for gas production whereas the producers involved in the Agreements were demonstrably capable of independently attracting capital for their exploration and development projects. J.A. at 69–72. This supposition is flawed in two ways, however. Firstly, there is no evidence whatsoever in the record to support the FPC's assumption that these producers could have obtained the necessary capital without the help of the interest reimbursement clauses contained in the Agreements. These clauses were integral parts of a highly complex financing arrangement. Petitioner's Brief at 9, 20. There is no evidence in the record which might indicate either that the Agreements made the producers' capital formation possible, or that the loans would have been forthcoming without such an incentive. This is one factual dispute, then, which might well have been resolved in a hearing.

Secondly, and perhaps more importantly, we have found nothing in the Commission's orders setting up the advance payment program to indicate that the producers who were given such payments had to demonstrate an actual *need* for them. It is apparent that the Commission instituted the advance payment program merely as a means to enhance significantly the supply of natural gas in the interstate system during a period of critical nationwide gas shortages.[7] It declared that the program was expected to intensify the development of new sources of natural gas supplies and thus alleviate the supply shortage, but it never expressly mandated that a producer show that *but for* the advance payments it would not be able to obtain the necessary exploration and development capital.[8] We think it unreasonable for the Commission now to adopt such a standard for United's interest reimbursement arrangements when they apparently constitute an alternative means of attaining the same goal as the Commission's own advance payment program.[9] As the FPC orders implementing the advance payment program do not explicitly prohibit this alternative method of providing interest-free capital to producers, and the Commission has not shown that a "policy" of need is inherent in the program or that such a policy is in fact contravened by the Agreements, there is no proper basis for avoiding the statutory hearing requirement.

7. *See* FPC Order No. 499, 50 F.P.C. 2111, 2112–13 (Dec. 28, 1973); FPC Order No. 465, 48 F.P.C. 1550, 1553 (Dec. 29, 1972); FPC Order No. 441, 46 F.P.C. 1178, 1180 (Nov. 10, 1971); FPC Order No. 410, 44 F.P.C. 1142, 1144 (Oct. 2, 1970).

8. Thus, in its order concluding the rulemaking proceeding, the Commission focused exclusively on the needs of the pipeline companies in competing for gas supply contracts:

> It is the Commission's view that, particularly at the present time when there are indications of a natural gas shortage, it is not in the public interest for pipeline companies to bear the cost of assuring themselves and their customers of a future supply of natural gas. We believe that, when it is necessary for pipeline companies to make advance payments in order to contract for gas supplies, it it equitable that the companies should earn on the amounts advanced.

Order No. 410, 44 F.P.C. 1142, 1144 (1970).

9. To this extent then, the prior FPC cases stating that such interest reimbursement schemes on their face are "inconsistent with the requirements and intent of our outstanding advance payment rulemaking orders," are not the products of reasoned agency decisionmaking. Sea Robin Pipeline Co., FPC Dkt. No. RP76–39 (Dec. 11, 1975) at 3; Michigan Wisconsin Pipe Line Co., FPC Dkt. No. RP75–96 (May 19, 1975) at 2; Northern Natural Gas Co., FPC Dkt. No. RP75–87 (May 16, 1975) at 3; Natural Gas Pipeline Co., FPC Dkt. No. RP75–90 (May 16, 1975) at 3; Southern Natural Gas Co., FPC Dkt. No. RP75–84 (May 15, 1975) at 2–3.

We note that in its brief to this court, the Commission for the first time proffers still another justification for its summary disposition. It now argues that United's Agreements violated its long-standing rate policy prohibiting suppliers from burdening consumers with costs from which they do not benefit. Respondent's Brief at 13–16. The Commission did not consider this argument in reaching its decision in this case, however; thus, for purposes of this litigation it amounts to nothing more than *post hoc* rationalization. The Supreme Court has explicitly cautioned that

> we cannot "accept appellate counsel's *post hoc* rationalizations for agency action"; for an agency's order must be upheld, if at all, "on the same basis articulated in the order by the agency itself."

*FPC v. Texaco, Inc.,* 417 U.S. 380, 397, 94 S.Ct. 2315, 2327, 41 L.Ed.2d 141 (1974), *quoting Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168–69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). *See also SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); *City of Cleveland v. FPC,* 174 U.S.App.D.C. 1, 525 F.2d 845, 853 (1976). We might also add that the Commission's argument apparently would apply with equal force to its own advance payment program in effect from 1970 through 1975.

We are confident that on remand the Commission will afford United a full and complete opportunity to prove its contentions: for example, that the Agreements effected the same result as the advance payment program and did so at a lower cost to the consumer and at less risk to the pipeline; and that the costs involved were prudently incurred. The Commission, of course, should view the Agreements in the context of the time which produced them—a time of severe natural gas shortage when experimental programs fashioned to alleviate this problem were being implemented. A too restrictive view of alternative methods of meeting this crisis advanced by parties other than the Commission certainly would not be in the public interest.[10]

## III. CONCLUSION

As there are genuine issues of material fact yet to be determined, and as the interest reimbursement arrangements, on their face, do not violate any FPC regulation or policy, this case must be remanded to the Commission for evidentiary hearings.

*So ordered.*

10. We intend to intimate no view as to how the Commission should decide this case on the merits after United has had an opportunity to factually support its contentions with regard to the interest reimbursement scheme at issue here; rather, we are concerned solely with how the Commission should proceed to consider the merits of United's proposed tariff sheets.