SOUTHERN NATURAL GAS COMPA-
NY, Petitioner-Appellant,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent-Appellee.

No. 85-7773.

United States Court of Appeals,
Eleventh Circuit.

April 3, 1987.

John E. Holtzinger, Jr., Newman & Holt-
zinger, P.C., John T. Stough, Washington,
D.C., for Atlanta Gas Light Co.

Kenneth M. Albert, Goldberg, Fieldman
& Letham, P.C., Glenn W. Letham, Wash-
ington, D.C., for Chattanooga Gas Co.

Morley, Caskin & Generelly, Stanley M.
Morley, Paul W. Diehl, Joel F. Zipp, Wash-
ington, D.C., for South Carolina Pipeline
Co.

James J. Flood, Jr., Flood & Ward, Wash-
ington, D.C., for South Natural Gas Co.

Joanne Leveque, F.E.R.C., Solicitor's Of-
fice, Washington, D.C., for Federal Energy
Reg. Comm—"FERC."

Jeffrey D. Komarow, Wright & Talis-
man, P.C., Washington, D.C., for Alabama
Gas.

Before RONEY, Chief Judge,
TJOFLAT and HATCHETT, Circuit
Judges.

PER CURIAM:

This case results from the Federal Ener-
gy Regulatory Commission's (FERC) sum-
mary rejection of a proposed tariff change
containing a minimum bill provision, filed
by Southern Natural Gas Company pursu-
ant to section 4(d) of the Natural Gas Act.
15 U.S.C.A. § 717c(d), and 18 C.F.R. § 154.-
63. In pertinent part, section 4(d) requires
30 days notice to FERC and to the public
for any rate changes, and Regulation 154.-
63 prescribes the technical requirements
for filing, and the information to be sub-
mitted with any proposed change. FERC
rejected Southern's filing because it was
deficient in evidentiary support and con-
trary to FERC policy regarding the imposi-
tion of minimum bill provisions. *Southern
Natural Gas Company*, 32 FERC ¶ 61,447
(1985). We affirm.

Under conventional ratemaking practice,
a utility is permitted to recover in its rates
its cost of service, including a reasonable
return on its investment. Costs are divided
into fixed and variable components. Varia-
ble costs include those things which fluctu-
ate with changes in the volume of sales,
such as the cost of supplying gas to cus-
tomers. Fixed costs remain relatively con-
stant regardless of fluctuations in sales
and include costs related to financing and
maintaining the pipeline facilities.

Southern, like others in the industry, has
a demand and a commodity component to
its rates. Generally, demand rates are de-
signed to recover some, but not all, of the

fixed costs, about 50% in Southern's case. The demand charge is essentially a fixed cost to Southern's customers because it is based on contract demand, which reflects how much gas Southern would be obligated to deliver if the customer wants it, not on how much the customer actually takes. The commodity rate includes all of the pipeline's remaining fixed costs and all of the variable costs. These are distributed among customers based on volume of actual sales, and are therefore variable from the customer's standpoint. Over the years the industry has developed "minimum commodity bills." Under these proposals, if a customer took less than a specified level of gas, he would be charged for the minimum amount anyway. A customer would be forced to take the minimum volume of gas, as a practical matter, since he must pay for it, and thus, it would not be economical to purchase from an alternative supplier, even at a lesser rate. If he did not take the minimum amount, however, his cost of what he did take would be increased.

In the proposal under review in this case, Southern sought to impose a minimum bill on its partial requirements customers, those customers not dealing exclusively with Southern for their gas supplies, having what Southern referred to as a "deficiency volume." The deficiency volume is the difference between the minimum purchase volume, set at 95% of the average purchases by the customer over the prior five years, and the actual purchases during any year in which the minimum bill was in effect. Southern stated that the minimum bill was designed to cover only the fixed cost component of its commodity rate. Southern also claimed to be at a competitive pricing disadvantage because competing pipelines already had minimum bills in effect, and argued that the minimum bill proposal was necessary to put it on a level playing field in attempting to market gas.

In response to filings made under this section, FERC may allow the change to take effect, or suspend the effectiveness of the proposal for up to five months and hold an evidentiary hearing on the merits. If the issue is not resolved at the end of the suspension period, the proposal may take effect subject to an order of refund. 15 U.S.C.A. § 717c(e).

Under some circumstances, however, FERC may summarily reject a filing and prevent its effectiveness completely. Summary rejection of a filing is appropriate when the filing is a nullity as a matter of law, or when the filing is patently deficient in form. *United Gas Pipe Line Company*, 19 FERC ¶ 61,060 (1982) *(United)*. See *United Gas Pipe Line Co. v. FPC*, 551 F.2d 460 (D.C.Cir.1977); *Municipal Light Boards of Reading and Wakefield, Mass. v. FPC*, 450 F.2d 1341 (D.C.Cir.1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972). No contention having been made that the Southern filing was a nullity, the issue in this case is whether the filing was deficient.

FERC contends Southern's filing was deficient because it constituted a major rate increase, and lacked sufficient evidentiary support for that kind of change.

Major rate increases are rate changes that will result in a general increase in revenues for the stated purpose of obtaining a fair rate of return on jurisdictional sales, changes that extend to all or substantially all jurisdictional sales, or changes that are associated with the delivery of substantially changed volumes of gas to existing customers. 18 C.F.R. § 154.-63(a)(2). Documentary evidence required to support a major rate increase, subsection 154.63(b)(3), is significantly more stringent and detailed than the data required for changes other than in rate level, subsection 154.63(b)(2). The parties agree that Southern's documentary evidence supplied with its filings were sufficient for changes other than in rate level, but are insufficient for the major rate increase requirements. The issue to be decided on appeal, therefore, is whether the filing was properly characterized as one for a major rate increase.

Southern contends this is not a major rate increase because its jurisdictional sales have been eroded since the establishment of its current rate, and it is currently generating annual deficits when measured

against approved projections at the time the rate was set, and even if the minimum bill proposal becomes effective, Southern anticipates its annual receipts to remain approximately $6,500,000 below current rate projections. The rationale is that without an increase in current rate projections, it is not a major increase in rates.

This argument fails for two reasons. *First,* many rate increases are premised on an underrecovery of expected revenues and not necessarily for the purpose of obtaining a recovery above previous projections. *Second,* the record reflects this minimum bill proposal would generate annual receipts of approximately $12,800,000 more than Southern's current receipt level. In order for the customers who would be affected by this proposal to acquire gas from Southern, without an implicit rate increase, those customers would be required to increase their present quantity purchases. FERC's characterization of this $12,800,-000, annual increase in receipts as a major rate increase is supported by substantial evidence.

Southern also argues that FERC has accepted similar filings as minimum bill proposals without requiring major rate increase documentation. In *United,* 19 FERC ¶ 61,060, FERC was confronted with a minimum bill filing which Southern claims was very similar to this proposal. The *United* filing was not supported by Regulation 154.63(b)(3) documentation. FERC accepted that filing and set a hearing on the merits.

FERC distinguishes *United* because United's filing closely followed a major rate increase filing and the two filings were consolidated for FERC action. In ruling on the sufficiency of the filing, FERC stated:

> The Commission ... has reviewed the filing and has determined that it satisfies the minimum requirements of our regulations. Furthermore, there is relevant data available in United's general Section 4 rate filing.... [A]s a matter of law, [the dispute over the sufficiency of supporting data] does not support a rejection of the filing.

*United,* 19 FERC at ¶ 61,095. Southern's filing was not made in conjunction with or close to a major rate filing so the Commission did not have the data relevant to such a filing.

In any event, FERC contends the filing is contrary to FERC policy regarding minimum bill proposals. The purposes permitted by FERC for minimum bill proposals were set out in *Atlantic Seaboard Corp.,* 38 F.P.C. 91 (1967), *aff'd,* 404 F.2d 1268 (D.C.Cir.1968). *Atlantic Seaboard* provided that a minimum bill could be justified upon a showing that the bill was specifically and narrowly designed to provide for either of the following:

> (1) the recovery of that portion of a pipeline's rates which allocate fixed charges to the commodity component;
>
> (2) the protection of customers with no alternate supply from having to bear the cost of facilities constructed for a customer which obtains an alternate source; and
>
> (3) [the recovery of] the minimum take-or-pay obligation which a pipeline has to its suppliers.

*Atlantic Seaboard Corp.,* 38 F.P.C. at 95. These narrow purposes for a proposed minimum bill were reinforced by *Mississippi River Transmission Corp. v. FERC,* 759 F.2d 945 (D.C.Cir.1985) (*MRT*). In *MRT,* a case resulting from the *United* proceedings, the D.C. Circuit held that FERC must not only establish that a minimum bill proposal satisfies the *Atlantic Seaboard* criteria, but must also ensure, based on substantial record evidence, "that the particular minimum bill proposed is specifically designed to achieve that remedy, but nothing more." *MRT,* 759 F.2d at 950. FERC claims that *MRT* required a subsequent tightening of FERC's own procedures regarding threshold showings for minimum bill proposals.

Without additional information required under Regulation 154.63(b)(3), FERC argues that it is impossible to determine whether the *Atlantic Seaboard* and *MRT* requirements have been met. Although Southern argues the *MRT* court was presented with a complete record after a

public hearing on the merits, and does not address the issue of initial filing requirements, the question is whether FERC can satisfy the *MRT* requirements without more detailed information than that provided by Southern. The decision that FERC could not make the *MRT* findings from the summary tables provided by Southern is supported by the record. The fact that FERC has taken no action to date to formally promulgate changes in its regulations regarding minimum bill filings is irrelevant. To comply with *MRT* requirements, it is entitled to have more information.

AFFIRMED.