931 F.2d 88
 289 U.S.App.D.C. 243, 125 P.U.R.4th 526
 ANR PIPELINE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Natural Gas Pipeline Company of America, Indiana Gas
Company, Inc., Michigan Consolidated Gas Company,
et al., Intervenors.
ANR PIPELINE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Hadson Gas Systems, Inc., Natural Gas Pipeline Co. of
America, Indiana Gas Company, Inc., et al., Intervenors.
 Nos. 89-1753, 90-1298.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 8, 1991.
Decided April 26, 1991.
 
 J. Gordon Pennington, with whom Daniel F. Collins, James Howard, and William W. Brackett, were on the brief, for petitioner in No. 89-1753 and No. 90-1298.
 Dwight C. Alpern, Atty., F.E.R.C., with whom William S. Scherman, General Counsel, and Jerome M. Feit, Sol., F.E.R.C., were on the brief, for respondent in No. 89-1753 and No. 90-1298.
 Bruce F. Kiely for Wis. Distributor Group and Jeffrey M. Petrash for Mich. Consol. Gas Co. were on the joint brief, for intervenors, Mich. Consol. Gas Co. and Wis. Distributor Group, in No. 90-1298.
 Marge O'Connor entered an appearance, for intervenor, Mobil Natural Gas, Inc., in No. 89-1753 and No. 90-1298.
 David T. Andril, James U. Hamersley, J. Craig Youngblood, and D. Virginia Smith entered appearances, for intervenor, Fina Oil and Chemical Co. in No. 90-1298.
 
 
 1
 Glen S. Howard and Katherine P. Yarbrough entered appearances, for intervenor, Ass'n of Businesses Advocating Tariff Equity, in No. 90-1298.
 
 
 2
 Philip M. Marston entered an appearance, for intervenor, Hadson Gas Systems, Inc., in No. 90-1298.
 
 
 3
 Emmitt C. House, Paul E. Goldstein, Paul W. Mallory, and Georgetta J. Baker entered appearances, for intervenor, Natural Gas Pipeline Co. of America, in No. 89-1753 and No. 90-1298.
 
 
 4
 Ronald E. Christian entered an appearance, for intervenor, Indian Gas Co., Inc., in No. 90-1298.
 
 
 5
 Jennifer N. Waters and Toni M. Fine entered appearances, for intervenor, United Cities Gas Co., in No. 90-1298.
 
 
 6
 Before EDWARDS, RUTH BADER GINSBURG and THOMAS, Circuit Judges.
 
 
 7
 Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.
 
 RUTH BADER GINSBURG, Circuit Judge:
 
 8
 Petitioner ANR Pipeline Company seeks our review of two rulings summarily made by the Federal Energy Regulatory Commission ("FERC" or "Commission"). Both rulings relate to tariff sheets ANR filed in May 1989 to implement a general rate increase. ANR objects to FERC's summary action rejecting: (1) ANR's inclusion of accrued take-or-pay prepayments in its rate base; and (2) ANR's third party transportation tariff provision. We uphold the Commission's summary disposition of the accrued take-or-pay prepayments item, but we conclude that the third party transportation charge at issue was not so postured as to warrant summary adjudication.
 
 I.
 
 9
 On May 1, 1989, ANR submitted to the Commission a rate-change filing pursuant to section 4 of the Natural Gas Act, 15 U.S.C. Sec. 717c. Section 4 requires a natural gas company to file with the Commission any changes in its rates thirty days in advance of the date it plans to put such rates in effect. Subsection (e) of the prescription authorizes the Commission to "enter upon a hearing concerning the lawfulness of such rate." 18 U.S.C. Sec. 717c(e). While the evidentiary hearing is pending, the Commission may defer the use of new or changed rates and charges for a period of up to five months. See id. If, after the hearing, the Commission determines that the new rates are unlawful, it may order the company "to refund, with interest, the portion of such increased rates or charges by its decision found not justified." Id.
 
 
 10
 ANR's proposed tariff[1] submitted as part of its May 1989 filing included a section entitled "Third Party Charges." That section reads, in pertinent part:
 
 
 11
 If Shipper requests, and Transporter [i.e., ANR] agrees, that Transporter shall use Transportation Service it has contracted or shall contract for with Third Party(s), Shipper shall pay Transporter an amount equal to the charges Transporter is obligated to pay to Third Party(s) for Transportation or other services attributable to performance of service on behalf of Shipper under this Rate Schedule.
 
 
 12
 See, e.g., Third Revised Sheet No. 16, ANR Pipeline Company, F.E.R.C. Gas Tariff, Original Volume No. 1-A, reprinted in Joint Appendix (J.A.) at 4. According to ANR, this provision allows it to recover the costs of third party pipeline transportation charges incurred by ANR on behalf of, and at the request of, individual customers.[2]
 
 
 13
 On May 31, 1989, FERC issued an order generally accepting the tariff sheets submitted by ANR, subject to hearing and refund, and suspending their effective date until November 1, 1989. See ANR Pipeline Company, 47 F.E.R.C. p 61,304 (CCH) (1989). However, FERC ordered ANR to refile within 30 days tariff sheets that eliminated, inter alia, the third party transportation provision. See id. at 62,090. The Commission gave three reasons for its rejection of the tariff provision. FERC said, first, that the provision "could lead to double cost recovery" because some third party transportation costs were already included in ANR's rate base under Account No. 858 (costs for the transmission and compression of gas by others). See id. The Commission further stated that the third party transportation charge "could also be viewed" as a cost tracker,[3] which would be contrary to Commission regulations, or as a provision for "brokering,"[4] which would require that ANR first obtain a certificate authorizing such activity. See id.
 
 
 14
 Both ANR and certain of ANR's customers moved for a rehearing of FERC's order. On November 30, 1989, FERC issued an order denying a rehearing on the issue of third party transportation charges. See ANR Pipeline Company, 49 F.E.R.C. p 61,123 (1989). The Commission restated its position that the third party charges were already recovered through the costs included in Account No. 858. The Commission further noted that "[i]f ANR is concerned about incurring such costs in excess of its ... estimates, it can protect itself by allowing its shippers to make their own third party transportation arrangements and pay for them directly." Id. at 61,523.
 
 
 15
 On the motion for rehearing by one of ANR's customers, FERC also summarily ordered ANR to remove over fifty million dollars of accrued but unpaid take-or-pay prepayments[5] from its rate base. The Commission stated that "[o]nly amounts paid to a seller of gas under take-or-pay provisions of a gas purchase contract are includable" in rate base, and that ANR "ha[d] not demonstrated that any change is warranted to this approach." Id. at 61,525.
 
 
 16
 In a subsequent Order on Rehearing, issued January 26, 1990, FERC again denied rehearing on the issue of third party transportation charges "for the reasons given in the two prior orders." See ANR Pipeline Company, 50 F.E.R.C. p 61,091 (1990). The Commission noted, however, that its ruling "is without prejudice to ANR's opportunity to support its contention at the hearing that its proposed third party transportation charge offers advantages to its customers that should outweigh the Commission's policy against trackers for Account No. 858 costs." Id. at 61,255. The Commission also denied rehearing on the removal of accrued prepaid gas costs. The Commission stated:
 
 
 17
 Account No. 165 is for "payment for undelivered gas.... Prepayments for gas are those amounts paid to a seller of gas under 'take-or-pay' provisions of a gas purchase contract...." Amounts properly included in Account No. 165 become part of a company's "cash working capital" on which a return is earned as part of the rate base. Obviously, accruals of liability for prepayments that have not actually been paid does not reflect an investment of capital on which a return can be earned, and thus cannot be included in Account No. 165. Rates designed in violation of this policy will not be allowed, even on a subject to refund basis.
 
 
 18
 Id. (footnote and internal quotations omitted). FERC affirmed the denial of rehearing on both of these issues in an order dated April 16, 1990. See ANR Pipeline Company, 51 F.E.R.C. p 61,038, at 61,076 (1990). ANR petitions for review of the Commission's orders.
 
 II.
 
 19
 ANR argues that FERC transgressed ANR's statutory rights under Section 4 of the Natural Gas Act by summarily rejecting, without a hearing, its inclusion of accrued prepayments as a cost of service and its third party transportation tariff provision. We have held that the Commission may dispense with an evidentiary hearing only in certain limited circumstances "where the facts are not in dispute and the new tariff contravenes valid and explicit [Commission] regulations or policy." United Gas Pipe Line Co. v. Federal Power Comm., 551 F.2d 460, 463 (D.C.Cir.1977); see United Gas Pipe Line Co. v. FERC, 707 F.2d 1507, 1511-12 (D.C.Cir.1983) (agency may reject a filing "that patently is either deficient in form or a substantive nullity") (quoting Municipal Light Boards v. Federal Power Comm., 450 F.2d 1341, 1345 (D.C.Cir.1971)). The Commission's own regulations allow a "decisional authority" to summarily dispose of all or part of a proceeding if "there is no genuine issue of fact material to the decision." 18 C.F.R. Sec. 385.217.
 
 
 20
 We uphold FERC's summary rejection of ANR's inclusion of accrued take-or-pay prepayments in its rate base. There is no factual dispute as to what the accrued prepayments represent: ANR does not contest that it sought to include in its rate base over fifty million dollars in prepayments that it has not actually paid to its suppliers. Nor is there any doubt that the inclusion of accrued but unpaid prepayments violates Commission regulations. The Uniform System of Accounts prescribed by the Commission clearly contemplates that prepayments are to be included in rate base only after they have been paid:
 
 
 21
 This account shall include payments for undelivered gas and other prepayments of rents, taxes, insurance, interest, and like disbursements made prior to the period to which they apply. Prepayments for gas are those amounts paid to a seller of gas under "take or pay" provisions of a gas purchase contract....
 
 
 22
 18 C.F.R. Part 201 (Account 165) (emphasis supplied). The Commission adequately explained that if ANR were permitted to include unpaid prepayments in its rate base, the Commission would be authorizing ANR to charge its customers a return on an investment it has not made. Accordingly, we uphold the Commission's summary rejection of the accrued prepayments as a cost of service that warrants inclusion in ANR's rate base.[6]
 
 
 23
 While we express no opinion on the merits of ANR's proposed third party transportation charge, we conclude that FERC's summary action on this item was improper. In its May 31, 1989 order rejecting the provision, the Commission listed three ways one "could" regard the charge, but it did not definitively rule on any.[7] In the Commission's first denial of rehearing, on November 30, 1989, the Commission mentioned only its "double recovery" rationale. In its second denial of rehearing, on January 26, 1990, the Commission relied on "the reasons given in the two prior orders," but it then expressly left open, for presentation at the hearing, the question whether the third party charge "offers advantages to its customers that should outweigh the Commission's policy against trackers." ANR Pipeline Co., 50 F.E.R.C. p 61,091, at 61,255.
 
 
 24
 By allowing ANR to urge at the hearing before the administrative law judge (ALJ) that its tariff provision merited a waiver of the Commission's cost-tracking prohibition,[8] the Commission in effect acknowledged that there were unresolved issues of fact regarding that provision. Having found it proper to allow a full airing of the cost-tracking question, the Commission could not simultaneously describe the matter as one "where the facts are not in dispute and the new tariff [is irreconcilable with] valid and explicit [Commission] regulations or policy." United Gas Pipe Line Co., 551 F.2d at 463.[9]
 
 
 25
 Furthermore, the Commission has not enlightened us on the relationship between the cost-tracking issue, reserved for hearing before the ALJ, and the two other grounds offered by the Commission for rejecting the proposed provision. Any finding by the ALJ on the cost-tracking issue would be an idle exercise if FERC had indeed already determined that the third party charge violated the Commission's policy against double cost recovery or brokering without a certificate. At oral argument, counsel for ANR confirmed to the court that ANR was not seeking, with regard to this charge, certification for capacity brokering. We therefore read the Commission's statement that its order was "without prejudice" to the question of cost trackers to imply as well that the ALJ should consider ANR's associated contentions, i.e., that its proposed third party charge did not entail double cost recovery or brokering. As to all three grounds for rejection offered by the Commission, it thus appears, further proceedings are in order and summary disposition was improper.
 
 
 26
 The hearing on ANR's May 1989 general rate-increase proposals is currently pending before an ALJ; no decision has yet issued. In the course of the hearing, ANR was allowed to present evidence on its third party transportation charge provision. See Brief for Petitioner at 6. We assume that all three grounds set forth by the Commission in its initial rejection of the proposal--the prohibitions against double recovery, cost tracking, and capacity brokering--were "without prejudice" to re-evaluation on a full record. In the meantime, ANR is entitled to implement the proposed third party transportation charge, subject to refund, pending final resolution of its May 1989 rate filing.
 
 III.
 
 27
 The Commission properly rejected, by cogent summary ruling, inclusion of accrued take-or-pay prepayments in ANR's rate base. In contrast, the Commission's ruling on ANR's third party transportation tariff provision lacks the clarity and consistency necessary for summary adjudication. We therefore uphold the former ruling, and vacate and remand the latter for further proceedings consistent with this opinion.
 
 
 28
 It is so ordered.
 
 
 
 [1]
 A "tariff" is the contract which governs a pipeline's service to its customers
 
 
 [2]
 Without addressing the merits of ANR's argument, we note that ANR draws a distinction between its customer-specific third party transportation charge and the type of system-wide third party transportation charge at issue in United Gas Pipe Line Co. v. FERC, 707 F.2d 1507 (D.C.Cir.1983). In United Gas Pipe Line, this court upheld FERC's summary rejection of a proposed tariff that provided for automatic price adjustments pegged to system-wide third party transportation costs
 
 
 [3]
 A "cost tracker" is a rate that a pipeline is permitted to adjust periodically on the basis of increased (or decreased) costs without having to file evidence of its other costs during the same period. Cost trackers are generally prohibited because they allow increases in rates even though other costs that are not being tracked may have decreased enough to offset the increases in the tracked costs. See 18 C.F.R. Sec. 154.38(d)(3); United Gas Pipe Line, 707 F.2d at 1509
 
 
 [4]
 Capacity brokering is "the practice whereby a party entitled to transportation services on a particular pipeline assigns or 'brokers' that entitlement to another party." Panhandle E. Pipe Line Co. v. FERC, 890 F.2d 435, 438 (D.C.Cir.1989)
 
 
 [5]
 Take-or-pay prepayments are made to sellers of gas when the pipeline fails to make a contractually specified minimum volume of purchases. Take-or-pay provisions generally provide that the pipeline shall either take, or pay for, a specified quantity of gas within a specific contract period. If the pipeline pays for gas it does not take, it may be allowed to use the payments at a later date by taking volumes of gas in excess of the contractually specified minimum, usually without additional payment. Gas prepayments are therefore treated as assets with future value to a pipeline and may be included in a pipeline's rate base. See 50 Fed.Reg. 16076 ("Regulatory Treatment of Payments Made in Lieu of Take-or-Pay Obligations")
 In this case, ANR has not actually made all of its prepayments, apparently because it believes some of them are "unjustified or overstated." See Brief for Petitioner at 33. Recognizing that the objections it made to its suppliers may not prevail, ANR has recorded at least a portion of the disputed prepayments as accrued and owing.
 
 
 [6]
 No issue was raised at any stage in this case concerning the quality of the rate, after deletion of the accrued unpaid prepayments from the rate base, as "just and reasonable." Cf. Tennessee Gas Pipeline Co. v. FERC, 860 F.2d 446 (D.C.Cir.1988)
 
 
 [7]
 We note that ANR vigorously contests each of the three reasons given by the Commission for rejecting the third party transportation tariff provision. First, ANR contends that there is no possibility of double recovery because when a specific customer asks ANR to obtain the services of another pipeline, ANR bills such costs directly to the shipper and does not include such costs in Account No. 858. See Brief for Petitioner at 25. Second, ANR argues that the tariff provision is not a cost tracker because it seeks only to pass through charges to specific customers, and then only at the customer's request. See id. at 26-27. Third, ANR denies that the provision allows it to act as a "broker" because it is not attempting to control access to the pipeline capacity of other transporters. See Reply Brief for Petitioner at 4-8
 
 
 [8]
 The Commission's regulations provide that upon application and "for good cause shown," the Commission may grant exceptions to the bar against cost trackers. 18 C.F.R. Sec. 154.52(a)
 
 
 [9]
 This case does not involve a situation comparable to that presented in United Gas Pipe Line Co. v. FERC, 707 F.2d 1507 (D.C.Cir.1983), in which we upheld the Commission's summary rejection of a provision that all parties agreed was a cost tracker. In that case, the Commission held that its summary rejection was "without prejudice" to the development of an evidentiary record at the rate hearing, in which the Commission planned to consider prospectively changing its prohibition against tracking transportation costs and revenues. See id. at 1508-09